The PEOPLE OF the STATE OF ILLINOIS, Plaintiff-Appellant,

v.

LIFE OF MID–AMERICA INSURANCE COMPANY, Integon Corporation, United Services of America, Inc., Jerry C. Stovall, Walter C. Rhodes, Jr., Jean Steffen, Dick Mann, Judy Mann, Edwin Baker, John Barry, Melvin Berlin, Marlene Binkley, David Campbell, Joe Darling, Richard Demski, Douglas Farder, Steven Franks, Eldon Furlong, George Ginder, Jane Gliebe, Jeff Goldberg, Janice Hamilton, Jimmie Hawkins, Kathleen Hollis, Walter Ingvoldstad, Steven Karas, Charles Landers, Dale Mandrell, Ted Mettger, Clyde Morgan, Richard Smith, William Stein, Jerald Thye and Kenneth Waymire, Defendants-Appellees.

No. 85–1873.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1986.

Decided Nov. 12, 1986.

˙Scott D. Spooner, Ill., Atty. Gen. Office, Springfield, Ill., for plaintiff-appellant.

Mary F. Stafford, Epton, Mullin & Druth, Ltd., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This action, commenced by the Illinois Attorney General (Attorney General), alleged that various individual and corporate defendants (Life of Mid-America) had engaged in a scheme to defraud Illinois consumers in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.* and the

Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Ann.Stat. ch. 121½, ¶¶ 261 *et seq.* (Smith-Hurd Supp. 1986). The district court granted the defendants' motions to dismiss. It held that the Attorney General was not the real party in interest, that he lacked capacity to sue, and that he lacked standing to sue. For the reasons set forth below, we affirm.

### I

The Attorney General filed a two-count complaint against the defendants[1] on August 21, 1984. In that complaint, he alleged that Life of Mid-America devised a deceptive marketing scheme aimed at defrauding elderly Illinois residents. Specifically, Life of Mid-America was alleged to have induced eight[2] elderly rural consumers to invest in "ultimate estate liquidity programs," which were promoted as tax shelters. Their sales campaign allegedly employed suggestive and misleading printed materials as well as factual misrepresentations and omissions with respect to the federal estate tax ramifications of their investments.

The first count alleged that, from June 1982 through June 1984, the defendants had engaged in a scheme to defraud eight elderly Illinois consumers, using the United States mails and interstate telephone lines, in violation of RICO. The second count, which was predicated on the same factual allegations, sought relief pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act. This claim was pendent to the first count.

The defendants filed motions to dismiss count one of the complaint. On March 13, 1985, the magistrate to whom the case was referred recommended that the district court grant the motions to dismiss. On April 23, 1985, the district court approved the magistrate's recommendation and dismissed the case.

### II

**A.** *The Governing Principles*

#### 1.

Fed.R.Civ.P. 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." The real party in interest is the one who "by the substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." C. Wright, *Law of Federal Courts*, § 70 (4th ed. 1983). Where the right asserted is based upon a federal statute, the real party in interest must be determined according to the federal substantive law. *See Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 604 (5th Cir.), *cert. dismissed,* 458 U.S. 1122, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982) (stating the general rule "that the question of whether a person is a real party in interest under Rule 17(a) is decided by the substantive law of the forum which created the right being sued upon"); *White Hall Building Corp. v. Profexray Division of Litton Industries, Inc.,* 387 F.Supp. 1202, 1204 (E.D.Pa.1974); *Rackley v. Board of Trustees,* 35 F.R.D. 516, 517 (D.S.C.1964); *see also Carter v. Berger,* 777 F.2d 1173 (7th Cir.1985).

The RICO statute provides that, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appro-

---

1. The defendants include Life of Mid-America Insurance Co., an Iowa corporation; its marketing agent, United Services of America, Inc.; its holding company, Integon Corp.; and various individual officers and sales agents for Life of Mid-America and United Services of America.

2. Appellant refers in his brief to "eight Illinois consumers" who were injured by the defendants' alleged activities. Appellant's Br. at 3. The complaint, however, lists the injured consumers as seven couples and one individual, for a total of fifteen individuals. R. 1 at 16. We will use the term "eight consumers" to denote eight "consumer units."

priate United States district court and shall recover three-fold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985), the Supreme Court emphasized that RICO is to " 'be liberally construed to effectuate its remedial purposes.' " (quoting Pub.L. No. 91–452, § 904(a), 84 Stat. 947 (1970)). Consequently, this court has, in its subsequent interpretation of RICO, stressed that "the plain language of the statute dictates that the injury requirement be construed broadly." *Illinois Dep't of Revenue v. Phillips*, 771 F.2d 312, 314 (7th Cir.1985).

However, just as faithfulness to the congressional intent and to the precedent of the Supreme Court requires that we give the injury requirement a broad reading, those same policy concerns require that we do not read the injury requirement out of the statute. Indeed, in *Sedima*, the Supreme Court emphasized the importance of the injury requirement:

> [T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."

105 S.Ct. at 3285–86 (citing *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)).

2.

Application of this principle in suits brought by governmental units has not been an easy task. However, while we have raised the "distress flag"[3] in search of additional congressional guidance, we have maintained a steady course: the injury requirement, while being broadly construed, must be fulfilled in order for a plaintiff to maintain a cause of action. In *Phillips*, 771 F.2d 312, the plaintiff, the Illinois Department of Revenue, was statutorily authorized to collect and administer taxes in Illinois. The defendant was alleged to have submitted nine fraudulent sales tax returns to the plaintiff through the United States mails. The state Department of Revenue brought suit under civil RICO to collect the unpaid state taxes. We held that the plaintiff had made out a *prima facie* case under RICO because the complaint had adequately set forth an injury to the state entity by reason of the alleged RICO violations.[4] *Id.* at 316.

We also adhered to the mandate of *Sedima* when, in *Carter*, 777 F.2d 1173, we upheld the dismissal of a case in which the taxpayer plaintiffs could assert only indirect injury. There, the plaintiffs, taxpayers of Cook County, Illinois, alleged that, because of the defendant's tax fraud, they had to pay more taxes than they otherwise would have paid. In *Carter*, we decided that, "only the County is entitled to prosecute under RICO this claim for lost taxes." *Id.* at 1178. We agreed with the district court that the fact "[t]hat the taxpayers would be the ultimate beneficiaries of the County's recovery did not make them real parties in interest." *Id.* at 1174.

**3.** *Illinois Dep't of Revenue v. Phillips*, 771 F.2d 312, 317 (7th Cir.1985).

**4.** Similarly, before *Sedima*, in *Schacht v. Brown*, 711 F.2d 1343 (7th Cir.), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983), the plaintiff, the Illinois Director of Insurance had been appointed to act as liquidator of an insolvent insurance company pursuant to a state statute. In this capacity, the Director acted as a receiver to pursue claims of the insolvent insurance company's estate. In the course of fulfilling these duties, the Director brought suit under RICO. We held that "the Director, as the statutory 'owner' of [the insolvent insurance company] and the *direct* victim of the defendants' unlawful activity, is precisely the kind of plaintiff who must be given standing in order to fulfill the deterrent objectives of RICO." 711 F.2d at 1360.

## B. *The Complaint in this Case*

■ The complaint in this case is indeed somewhat unconventional. If it is read as simply alleging injury to specific elderly individuals who are residents of Illinois, those individuals—not the state—are the persons allegedly injured in their business or property and therefore are the proper parties in this litigation.

■ The Attorney General submits that the complaint must be read as alleging injury to all the people of Illinois. We do not believe that a fair reading of the complaint supports the Attorney General's submission. In *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), the Supreme Court set forth the elements necessary for the maintenance of a *parens patriae* suit by a state on behalf of its citizens. "In order to maintain such an action, the State must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party. The State must express a quasi-sovereign interest." *Id.* at 607, 102 S.Ct. at 3268. One type of quasi-sovereign interest is that which a state has in the physical and economic health and well-being of its residents in general. *Id.* Another is a state's interest in "ensuring that the State and its residents are not excluded from the benefits that are to flow from participation in the federal system." *Id.* at 608, 102 S.Ct. at 3269.

Appellant's complaint does not allege an injury to a quasi-sovereign interest of the state of Illinois. Indeed, no allegations of any type of injury to the state are made.[5] The complaint alleges injury to eight elderly consumers. R.1 at 16. To maintain a *parens patriae* suit, however, "more must be alleged than injury to an identifiable group of individual residents." *Snapp*, 458 U.S. at 607, 102 S.Ct. at 3269. The Attorney General, acting on behalf of the people of Illinois, is merely a nominal party in this suit to recover for injury to eight consumers, and as such, has no *parens patriae* standing. *See Id.* at 600, 607, 102 S.Ct. at 3265, 3270.

Moreover, even if the complaint did sufficiently allege an injury to the state in its quasi-sovereign capacity, it is not clear to us that Congress, in enacting the RICO statute, intended to permit such a *parens patriae* proceeding. In *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), the Supreme Court refused to permit a state to maintain a *parens patriae* suit under section 4 of the Clayton Act in the absence of a specific congressional mandate:

A large and ultimately indeterminable part of the injury to the "general economy," as it is measured by economists, is no more than a reflection of injuries to the "business or property" of consumers, for which they may recover themselves under § 4. Even the most lengthy and expensive trial could not, in the final analysis, cope with the problems of double recovery inherent in allowing damages for harm both to the economic interests of individuals and for the quasi-sovereign interests of the State. At the very least, if the latter type of injury is to be compensable under the antitrust laws, we should insist upon a clear expression of a congressional purpose to make it so, and no such expression is to be found in § 4 of the Clayton Act.

---

5. Appellant argues that the complaint alleges injury to the people of Illinois in that "[t]he complaint's prayer for relief asked that restitution be made not only to the eight named consumers, but to '... any person who has suffered damages in connection with the unlawful practices alleged herein....'" Appellant's Br. at 3. The prayer for relief for "... any person who has suffered damages ..." is, however, a part of Count II of the complaint, which alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. R. 1 at 20. This appeal addresses the dismissal of Count I for failure to state a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.* The prayer for relief in Count I asks only for "the damages suffered by the individual victims listed above ..." and for costs and attorneys' fees. R. 1 at 17.

*Id.* at 264, 92 S.Ct. at 892. Central to the Court's analysis was its concern, expressed in the passage set forth above, that the allowance of such a suit would result in double recovery because the individuals who had been harmed could also have recovered for injuries to their "business or property." If a *parens patriae* suit for damages were permitted under the present RICO statute, the same possibility of double recovery would exist.

Congress has now amended the Clayton Act to allow a state attorney general to maintain an action roughly the same as a *parens patriae* action. Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub. L.No. 94–435, 90 Stat. 1383, 1394 (codified as amended at 15 U.S.C. § 15c). Despite the existence of identical language in the RICO statute and despite its "reliance on the Clayton Act model" [6] in enacting RICO, Congress has made no similar change in RICO. In the face of such congressional inaction, we must conclude that the maintenance of such an action was not intended by Congress. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

---

**6.** *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3282, 87 L.Ed.2d 346 (1985).