Raymond CROSS, Plaintiff,

v.

John SIMONS and Francisco Jacobs Valenzuela, Defendants.

No. 87 C 1835.

United States District Court, N.D. Illinois, E.D.

April 18, 1989.

On Motion to Alter or Amend Ruling May 11, 1989.

**590**

Malachy J. Cochlan & Assoc., Chicago, Ill., for plaintiff.

Dan K. Webb, Steven F. Molo, Peter C. McCabe, III, Julie A. Bauer, Winston & Strawn, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The plaintiff Raymond Cross brings this five count complaint against the defendants John Simons and Francisco Jacobs Valenzuela alleging violations of Illinois law and of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The defendants move to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). The court grants relief as follows.

### I

### *Rule 12(b)(2)*

The defendants move to dismiss the claims against them for lack of jurisdiction pursuant to Rule 12(b)(2).[1] When ruling on this motion, "the court must accept all undenied factual allegations and resolve all factual disputes in favor of the party seeking to establish jurisdiction." *Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir. 1988). Accordingly, any conflicts in the parties' affidavits will be resolved in Cross' favor. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987). In addition, "[t]he allegations in his complaint are to be taken as true *unless* controverted by the defendants' affidavits." *Id.* (emphasis added). Cross "has the burden of providing sufficient evidence to establish a *prima facie* case of personal jurisdiction" with regard to *each* cause of action. *Id.* at 333–34; *Club Assistance Program Inc. v. Zukerman,* 594 F.Supp. 341, 345 (N.D.Ill.1984). As the Seventh Circuit has held, this court will have " 'personal jurisdiction over a party in a diversity case only if an Illinois court would have such jurisdiction.' " *John Walker and Sons, Ltd. v. DeMert & Dougherty, Inc.,* 821 F.2d 399, 401 (7th Cir.1987), *quoting Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 589 (7th Cir.1984); Fed.R.Civ.P. 4(e).

The pertinent background facts are as follows. The plaintiff Cross is a citizen of Illinois. The defendant Simons is a citizen of Wyoming and Valenzuela, a resident of Texas, is a citizen of Mexico. John Karstrom, Jr., on Cross' behalf, contacted Simons in late November or early December of 1983 and requested information on the availability of mining properties.[2] Simons'

---

**1.** Cross initially responded to this motion by contending that the defendants should not be permitted to assert the defense of lack of personal jurisdiction because they failed to include it in their original motion to dismiss. On April 5, 1988, this court allowed the defendants to *amend* their motion to dismiss to include the lack of personal jurisdiction defense. Such an amendment was properly allowed given that the court had not yet ruled on the defendants' motion to dismiss and that the plaintiff was given an opportunity to respond to the newly asserted defense. *See Friedman v. World Transportation, Inc.,* 636 F.Supp. 685, 688 (N.D.Ill.1986) (Aspen, J.); Wright & Miller, *Federal Practice and Procedure:* § 1391, at 847–48 (1969) ("a preliminary motion may be amended to include a defense or objection inadvertently omitted."); *Cf. Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341, 343–44 (N.D.Ill.1984) (Shadur, J.) (The defendants were denied leave to bring a Rule

12(b)(3) motion after they had previously filed a Rule 12(b)(2) motion); *See also Myers v. American Dental Association,* 695 F.2d 716, 721–22 (3d Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983) (the court drew a distinction between the amendment of a pre-answer motion to include a waivable defense prior to ruling and the assertion of a waivable defense in a *successive* pleading).

**2.** In his complaint, Cross alleges that he was solicited by the defendants. Complaint, ¶¶ 7–14. These allegations need not be accepted as true because they are contradicted by Simons' affidavit. *See Turnock,* 816 F.2d at 333. In any event, a conclusory allegation of the solicitation of business "in a pleading is insufficient to establish a *prima facie* case of *in personam* jurisdiction." *Gordon v. Tow,* 148 Ill.App.3d 275, 101 Ill.Dec. 394, 398, 498 N.E.2d 718, 722 (1st Dist.1986).

Affidavit, ¶ 2. Karstrom stated that he acted on behalf of himself and an "associate." This was the first contact between the parties regarding the Guazapares mining property at issue in this case. Cross and Karstrom, at their request, met with Simons in Tuscon, Arizona on May 7, 1984. *Id.* In May of 1984, the defendants mailed the final draft of the agreement from El Paso to Cheyenne and finally to Cross in Chicago. Under the terms of the agreement, Cross would receive sole and exclusive rights to mine and sell the minerals at the Guazapares project. The defendants would be compensated in return for their contributions of knowledge and assistance. The agreement was signed by the defendants before it reached Cross in Chicago. The defendants later sent a signed addendum to the agreement to Cross. The addendum required the parties to open a bank account in El Paso, Texas. Valenzuela was given the duty of personally verifying the deposits. Simons traveled to Chicago to meet with Cross on three occasions to discuss the parties' agreement. These visits occurred in August of 1985 and in August and October of 1986. *Id.* at ¶ 3. Between May of 1984 and December of 1986, Cross had telephone contact with Valenzuela concerning the mining venture. Cross' Affidavit, ¶ 3.

■ Cross asserts that this court has personal jurisdiction over the defendants pursuant to the provisions of the Illinois Long–Arm Statute, Ill.Rev.Stat. ch. 110, ¶ 2–209. To establish personal jurisdiction, Cross must show that the defendants engaged in one of the enumerated jurisdictional acts, that the cause of action alleged arose from the jurisdictional act, and that the exercise of long-arm jurisdiction is consistent with the constitutional requirements of due process. *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 590 (7th Cir.1984).[3]

### a. *Transaction of Business*

■ Illinois courts have considered a number of factors when determining whether out-of-state defendants have transacted business within Illinois. For example, courts consider which party solicited the contract and where the contract was solicited, negotiated, executed, and substantially performed. *See United Federal Savings Bank v. McLean,* 694 F.Supp. 529, 533 (C.D.Ill.1988) (and cases cited within); *Konicki v. Wirta,* 169 Ill.App.3d 21, 119 Ill.Dec. 692, 696, 523 N.E.2d 160, 164 (2d Dist.1988). The courts also determine whether the defendants sought the benefits and protections of Illinois law by, for example, selecting Illinois law with a choice of law provision in their agreement. *Id.* Finally, the defendants' contacts with the state are noted. These contacts include visits, telephone calls, and any other regular activity in the state. *Id.* Finally, the court must focus on the acts of the defendants. *Afirm, Inc. v. Frazee Paint & Wallcovering Co.,* 624 F.Supp. 973, 976 (N.D.Ill.1985) (Aspen, J.); *Maurice Sternberg, Inc. v. James,* 577 F.Supp. 882, 885 (N.D.Ill.1984) (Grady, J.); *Gordon,* 101 Ill. Dec. at 398, 498 N.E.2d at 722.

■ There are insufficient facts to support a finding that the defendants transacted business in this case. The *plaintiff* solicited the agreement in either Cheyenne or Tuscon. The contract was negotiated, executed, and substantially performed by the defendants outside of Illinois. Even if the agreement was substantially performed in Illinois as Cross contends, this "would not appear to be sufficient, alone, for this Court to find *in personam* jurisdiction over the Defendant[s]." *McLean,* 694 F.Supp. at 535; *see also J.J. & J. Foundation Co., Inc. v. Tommy Moore, Inc.,* 640 F.Supp. 1119, 1122 (N.D.Ill.1986) (Nordberg, J.) ("a corporation does not 'transact business' in Illinois when it merely enters a contract which [provides that] the plaintiff must perform in part in Illinois.").

Furthermore, the defendants did not seek the benefits and protections of Illinois law through a choice of law provision. In addition, Simons' three Illinois visits were

---

**3.** The court notes that "[i]f jurisdiction is not proper under the long-arm statute, there is no need to consider whether the requirements of due process have been met." *Turnock,* 816 F.2d at 334.

made *after* the parties' agreement was executed. *See Woodfield Ford, Inc. v. Akins Ford Corp.*, 77 Ill.App.3d 343, 32 Ill.Dec. 750, 755, 395 N.E.2d 1131, 1136 (1st Dist. 1979). These visits are immaterial because Cross' causes of action arose out of the parties' agreement. Valenzuela never visited Illinois. His "mere communication with [Cross] by interstate telephone or mail service does not significantly aid jurisdiction." *Felicia, Ltd. v. Gulf American Barge, Ltd.*, 555 F.Supp. 801, 805 n. 9 (N.D. Ill.1983) (Shadur, J.). Consequently, the court finds that the defendants did not transact business for the purposes of Illinois' long-arm statute. *See Konicki*, 119 Ill.Dec. at 696, 523 N.E.2d at 164; *Woodfield Ford*, 32 Ill.Dec. at 755, 395 N.E.2d at 1136 (citing to *Artoe v. Mann*, 36 Ill.App.3d 204, 343 N.E.2d 647 (1st Dist.1976)) ("the mere receipt of a formal purchase order by mail in Illinois was not a sufficient contact where the plaintiff had initiated the transaction by visiting the defendant's out-of-state office, in spite of numerous phone calls between the parties, some of which originated out of state."); *Gordon*, 101 Ill. Dec. at 398–99, 498 N.E.2d at 722–23.

b. *The Commission of a Tortious Act*

■ Cross also asserts that the defendants have brought themselves within the reach of the long-arm statute by committing a tortious act within Illinois. *See* Ill. Rev.Stat., ch. 110, ¶ 2–209(a)(2). The defendants, according to Cross, committed a tortious act by mailing the agreement and addendum to him in Chicago. This agreement, which is allegedly replete with misrepresentations, led to the loss of Cross' funds. *See* Cross' Memorandum in Opposi-

tion to the Defendants' Amended Motion to Dismiss at 3. Under Illinois law, a tort occurs where the injury occurs. *See, e.g.*, *McBreen v. Beech Aircraft Corp.*, 543 F.2d 26, 28 (7th Cir.1976). However, "[a]n Illinois court does not acquire jurisdiction under the 'last act' doctrine simply because an economic loss is felt in Illinois when all the conduct contributing to the injury occurred outside Illinois." *Turnock*, 816 F.2d at 335. Still, "mailing (or causing mailing of) money or messages to Illinois, coupled with defendant's intent to affect Illinois interests, has consistently been held to satisfy the requirements of Section 2–209." *Club Assistance*, 594 F.Supp. at 346–47; *Turnock*, 816 F.2d at 335. The defendants mailed the agreement to Illinois with the intent of affecting Cross' interests. Consequently, they have committed a tortious act in Illinois.[4]

■ The court must now determine whether the causes of action alleged arose from the tortious act.[5] The common law fraud claim alleged in Count I clearly arose from the parties' agreement. Two of the three RICO claims also arise from the defendants' actions. In Count III, Cross alleges that the defendants conducted the affairs of the Navojoa Mining Enterprise through a pattern of racketeering. 18 U.S.C. § 1962(c). The acts of mail and wire fraud alleged as predicate acts occurred, in part, within Illinois. *See* Complaint, ¶¶ 112, 113. *See Club Assistance*, 594 F.Supp. at 349. In Count V, Cross alleges that the defendants acquired an interest in or control of the Navojoa Mining Enterprise through a pattern of racketeering. 18

---

**4.** The defendants oppose Cross' attempt to establish jurisdiction on this ground by citing to the court's decision in *Harvey v. Price*, 603 F.Supp. 1205 (S.D.Ill.1985). The *Harvey* case is distinguishable. In *Harvey*, the defendant's *only* contact with Illinois occurred *after* he committed his alleged misrepresentation. *Id.* at 1210. Thus, unlike here, the defendant's contact with Illinois did not coincide with his misrepresentation.

**5.** As a preliminary matter, the court notes that "causes of action must be minimally viable before they justify the assertion of personal jurisdiction." *Club Assistance*, 594 F.Supp. at 350 (citing to *Zeunert v. Quail Ridge Partnership*,

102 Ill.App.3d 603, 58 Ill.Dec. 242, 245, 430 N.E.2d 184, 187 (1st Dist.1981)). The civil conspiracy claim alleged in Count II is patently without merit because "under Illinois law the charge of conspiracy is merely an aggravation of alleged wrongful acts and not an actionable tort in itself." *Barrett v. Baylor*, 457 F.2d 119, 124 (7th Cir.1972); *In re American Reserve Corp.*, 70 B.R. 729, 736 (N.D.Ill.1987) (Kocoras, J.); *Seefeldt v. Millikin National Bank of Decatur*, 154 Ill.App.3d 715, 107 Ill.Dec. 161, 164, 506 N.E.2d 1052, 1055 (4th Dist.1987); *Ammons v. Jet Credit Sales, Inc.*, 34 Ill.App.2d 456, 181 N.E.2d 601, 605 (1st Dist.1962).

U.S.C. § 1962(b). The defendants' use of the proceeds from the pattern of racketeering to acquire an interest in or maintain control of Navojoa, a Mexican mining corporation, does not provide this court with personal jurisdiction over them. *Id.* Cross "does not allege that the defendants used any proceeds of their fraud to acquire any interest in an Illinois business." *Id.* Accordingly, this court does not have personal jurisdiction over the defendants for the claim alleged in Count V of the complaint.

Finally, in Count IV, Cross alleges that the defendants engaged in a conspiracy to violate 18 U.S.C. §§ 1962(a), (b), and (c). Cross has not alleged a violation of § 1962(a). Furthermore, Cross has alleged nothing that would allow this court to find that it had personal jurisdiction over the defendants for a claim alleging a conspiracy to violate § 1962(b). However, this court does have jurisdiction to determine whether the defendants conspired to violate § 1962(c). *Id.* As a result, this court will not dismiss Count IV for lack of personal jurisdiction as long as it is modified to allege only a conspiracy to violate § 1962(c). Accordingly, the court finds that Cross has satisfied the state law prong of the jurisdictional analysis with respect to Count I, Count III, and Count IV as modified.

■ The court must next determine "whether the exercise of long-arm jurisdiction in the case is consistent with due process as defined by prevailing case law." *John Walker*, 821 F.2d at 403. A non-resident defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940). This standard

requires only that the contacts between the defendants, the litigation and the forum be substantial enough so that the defendant should have reasonably anticipated being haled into the courts of the forum state.

*Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391, 399 (N.D.Ill.1982) (Marshall, J.) (citing to *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). This standard is satisfied "[w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there ... if the defendant has 'purportedly directed' [its] activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[6] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985).

In this case, the defendants intentionally sent the agreement and addendum to Cross, an Illinois resident. The parties' litigation arises from alleged misrepresentations contained in the above documents. Given this, the court finds that the exercise of jurisdiction under the Illinois long-arm statute comports with the requirements of due process. *See Id.* at 473, 105 S.Ct. at 2182, *quoting Travelers Health Association v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950) ("with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities.") Accordingly, the defendants' motion to dismiss for lack of personal jurisdiction is granted as to Counts II and V and denied as to Counts I, III, and IV as modified.

## II

### *Rule 9(b)*

The defendants move to dismiss the common law fraud claim alleged in Count I on

---

**6.** A court exercises "specific jurisdiction" when it "exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with this forum." *Heli-*

*copteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984).

the grounds that it fails to comply with the requirement of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). To satisfy Rule 9(b), "the plaintiff must describe the 'time, place and particular contents of the false representations, as well as the identity of the party making the misrepresentation, and what was obtained or given up thereby.'" *D & G Enterprises v. Continental Illinois National Bank and Trust Co. of Chicago,* 574 F.Supp. 263, 267 (N.D.Ill.1983) (Aspen, J.), *quoting Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *UNR Industries, Inc. v. Continental Insurance Co.,* 623 F.Supp. 1319, 1329 (N.D.Ill.1985) (Hart, J.); *McKee v. Pope Ballard Shepard & Fowle, Ltd.,* 604 F.Supp. 927, 930 (N.D.Ill.1985).

■ Rule 9(b) applies to common law fraud as well as to allegations of fraud in RICO actions. *Haroco, Inc. v. American National Bank and Trust Co. of Chicago,* 747 F.2d 384, 405 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Finally, "where there are allegations of a fraudulent scheme with multiple defendants, the complaint must 'inform each defendant of the specific fraudulent acts' which constitute the basis of the action against the particular defendant." *D & G Enterprises,* 574 F.Supp. at 267, *quoting Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1278 (N.D.Ill.1976); *see also McKee,* 604 F.Supp. at 931 ("Courts have been quick to reject pleadings in which multiple defendants are 'lumped together....'")

■ The allegations in Count I of Cross' complaint fail to meet the standards required by Rule 9(b). In paragraph 49 of the complaint, for example, Cross discusses various "statements, representations, pretenses, and promises" that were made but neglects to state the time and place where such statements were made. Moreover, it is not clear which defendant made each particular statement. The allegations made in paragraph 15 on the basis of "in-formation and belief" are insufficient to satisfy the requirements of Rule 9(b). *See D & G Enterprises,* 574 F.Supp. at 267. Consequently, the court will dismiss Count I of the complaint without prejudice. *See, e.g., Id.* at 268; *McKee,* 604 F.Supp. at 932. Cross is given thirty (30) days from the entry of this order to submit an amended complaint. If he fails to submit a timely amended complaint, Count I will be dismissed with prejudice.

### III

### *Rule 12(b)(6)*

The defendants move to dismiss the remaining counts of the complaint pursuant to Rule 12(b)(6). When ruling on this Rule 12(b)(6) motion, the court will "take the allegations in the complaint to be true and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff." *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). A complaint should be dismissed only when "it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle plaintiff to relief." *Id.* Nevertheless, "the federal rules still require that a complaint allege facts that, if proven, would provide an adequate basis for each claim." *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988).

The defendants move to dismiss the RICO claim in Count III on the grounds that Cross has failed to plead sufficient facts to establish a pattern of racketeering. Courts in this Circuit have dealt extensively with the RICO statute's "pattern" requirement. *See, e.g., Jones v. Lampe,* 845 F.2d 755, 756 (7th Cir.1988) (and cases cited within). A pattern of racketeering, as the Seventh Circuit has held, "requires at the barest minimum two 'acts of racketeering activity,' ... [although] much more than two such acts must be shown in order to demonstrate a pattern." *Lipin Enterprises, Inc. v. Lee,* 803 F.2d 322, 323 (7th Cir. 1986), *quoting* 18 U.S.C. § 1961(5); *see also Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n.

14, 87 L.Ed.2d 346 (1985). The "racketeering activities involved must reveal some 'continuity'—i.e., activities continuing over time or in different places—as well as some 'relationship' among activities—i.e., activities adding up to coordinated actions." *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 810 (7th Cir.1987); *see also Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987) ("a 'pattern' of racketeering ... means predicate acts sufficiently separate in time that they may be viewed as separate transactions."); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986).

▋ The question of whether a RICO "pattern" exists is a fact specific one which encompasses many relevant factors. *Jones*, 845 F.2d at 757; *Appley v. West*, 832 F.2d 1021, 1027 (7th Cir.1987); *Marshall & Ilsley*, 819 F.2d at 809–810. Nevertheless, the courts have not hesitated to dismiss complaints alleging RICO violations when the alleged facts, even assuming their truth, failed to establish a pattern of racketeering. *See, e.g., Jones*, 845 F.2d at 756, 759. Relevant considerations include "[t]he number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries...." *Morgan*, 804 F.2d at 975; *Elliott v. Chicago Motor Club Insurance*, 809 F.2d 347, 350 (7th Cir.1986). None of these factors, standing alone, is determinative. *Jones*, 845 F.2d at 757; *Morgan*, 804 F.2d at 975.

▋ Cross contends that the defendants' conduct involved two schemes, multiple and distinct injuries, and multiple victims. These contentions, while imaginative, are not borne out by the allegations of his complaint. The first scheme, according

to Cross, relates to the preservation and development of the mines. The second scheme relates to the consulting fees paid to Simons. The above actions represent one broad, general scheme relating to the Guazapares property. Cross' attempt to parse this one scheme into sub-schemes must fail. *See Jones*, 845 F.2d at 758 (the Seventh Circuit rejected the plaintiff's attempt to break one general scheme into sub-schemes). Cross further contends that each consulting fee paid to Simons constitutes a separate injury. However, these "injuries" are considered as part of the collective injury suffered by Cross in his complaint.[7] As a result, the court finds that these alleged injuries "stemmed from or were a part of the single harm" which resulted from the parties' agreement. *SK Hand Tool Corp. v. Dresser Industries, Inc.*, 852 F.2d 936, 943 (7th Cir.1988). Consequently, the payments are not distinct economic injuries for the purposes of RICO. *Id.*; Cf. *Jones*, 845 F.2d at 758–59 (and discussion of cases cited within).

Finally, Cross asserts that the "[m]ultiple victims are sufficiently alleged as 'U.S. Citizens.'" Cross' Response to Defendants' Motion to Dismiss at 2. A general allegation referring to other purported victims which "contains no well-pleaded facts permitting us to conclude that some [other] investors may have been hurt by the alleged fraud" is insufficient. *SK Hand*, 852 F.2d at 942. The predicate acts alleged were directed only toward Cross. Cross "has failed to allege any acts of mail or wire fraud, or other instances of racketeering activity, that executed a scheme to defraud the investing public." *Id.*[8]

Consequently, the allegations of the complaint indicate that there was one scheme to defraud one victim through multiple acts

---

**7.** In paragraph 17 of his complaint, Cross alleges that he was injured in the amount of the $400,000 that he expended "in equipment and material purchase and other expenses as required by said agreement." He discusses the unauthorized payments made to Simons in paragraph 18 yet he does not cite any distinct amount of loss that he suffered as a result of them. Complaint, ¶ 18. The loss suffered as a result of these payments is apparently included

in the figure indicating the loss he suffered on account of the agreement. *Id.* at ¶¶ 18, 54.

**8.** In paragraph 15 of his complaint, Cross does allege that the defendants were involved in a similar scheme that defrauded other individuals out of $500,000. However, as stated above, this allegation was made on "information and belief." Consequently, it will not be credited. *See D & G Enterprises*, 574 F.Supp. at 267.

of mail and wire fraud that occurred over a period of approximately three and a quarter years.[9] There are no *creditable* allegations that the defendants engaged in fraudulent activities in the past or threaten to do so in the future. *See Jones,* 845 F.2d at 759. The Seventh Circuit has repeatedly declined to find the existence of a pattern of racketeering in cases with similar factual allegations. *See SK Hand,* 852 F.2d at 943; *Jones,* 845 F.2d at 759 (and cases cited within). Accordingly, the court will dismiss Count III of the complaint because Cross has failed to allege sufficient facts to indicate that the defendants engaged in a pattern of racketeering.

■ Finally, the defendants assert that Count IV of the complaint should be dismissed because Cross has failed to adequately allege a RICO conspiracy under 18 U.S.C. § 1962(d). Section 1962(d) provides in pertinent part that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of [§ 1962]." 18 U.S.C. § 1962(d). To state a claim under § 1962(d), Cross must allege that each defendant agreed " 'that he and his co-conspirators will operate an enterprise through the commission of two predicate acts.' " *United States v. Stern,* 858 F.2d 1241, 1246–47 (7th Cir. 1988), *quoting United States v. Neapolitan,* 791 F.2d 489, 496 (7th Cir.), *cert. denied,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). Section 1962(d) "does not require that a defendant agree personally to commit two acts of racketeering activity." *Id.* at 1247. Cross alleges that the defendants participated in the affairs of Navojoa, an enterprise. Complaint, ¶¶ 6, 8. He further alleges that the defendants were personally involved in the commission of multiple predicate acts. *Id.* at ¶¶ 111–113. Thus, he adequately alleges a RICO conspiracy claim.

### Conclusion

For the foregoing reasons, the court grants the defendants' motion to dismiss

Counts II and V for lack of personal jurisdiction. The court grants the defendants' motion to dismiss Count I of the complaint without prejudice pursuant to Fed.R.Civ.P. 9(b). The court grants the defendants' motion to dismiss Count III pursuant to Fed.R.Civ.P. 12(b)(6) and denies the defendants' motion to dismiss Count IV. The plaintiff is directed to submit an amended complaint within thirty (30) days of the date of this order encompassing the claims in Counts I and IV in accordance with the modifications ordered by the court. If the plaintiff fails to amend within that time, those counts will be dismissed with prejudice.

### ON MOTION TO ALTER OR AMEND RULING

The defendants John Simons and Francisco Valenzuela move this court to alter or amend its ruling of April 18, 1989 pursuant to Federal Rule of Civil Procedure 59(e). During the status hearing of May 9, 1989, this court initially ruled that it would grant the defendants' motion to dismiss Count VI and deny the motion to dismiss Count IV. Upon reflection and further research, the court has determined that it will grant the defendants' motion in its entirety.

■ The defendants moved this court to amend its opinion for two reasons. First, the defendants correctly note that the court made no ruling with respect to their motion to dismiss Count VI of the plaintiff's complaint. The court's ruling with respect to this count was inadvertently omitted from its April 18 opinion. The court will dismiss Count VI which alleges a violation of 18 U.S.C. § 1962(a) for the following reasons. The court lacks personal jurisdiction over the defendants for this cause of action because Cross has failed to allege that the defendants used any proceeds of their fraud to operate Navojoa in Illinois. *See Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341, 348 (N.D.Ill.1984) (Shadur, J.). Although this defect could possibly be cured in an amend-

---

**9.** Although Cross alleges that the defendants' scheme began in 1976, the period of time that the scheme existed prior to his involvement "does not matter for our purposes." *SK Hand,* 852 F.2d at 943.

ed pleading,[1] this count must be dismissed in any event because Cross has failed to adequately plead the requisite pattern of racketeering. *See supra* at 595–96.

■ The defendants' second reason for amending the judgment concerns the court's ruling with respect to the RICO conspiracy alleged in Count IV of the complaint. The defendants contend that the court should dismiss the RICO conspiracy because Cross has failed to adequately allege a pattern of racketeering. The defendants in this motion made no effort to distinguish or reconcile the cases that they cited with the Seventh Circuit authority cited in this court's earlier opinion. *Id.*, at 596 (discussion of *United States v. Stern,* 858 F.2d 1241 (7th Cir.1988) and *United States v. Neapolitan,* 791 F.2d 489 (7th Cir.), *cert. denied,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986)). The court notes that the Seventh Circuit has made reference to the *Neapolitan* decision when discussing the parameters of a civil RICO conspiracy claim. *See, e.g., Otto v. Variable Annuity Life Insurance Co.,* 814 F.2d 1127, 1137 n. 10 (7th Cir.1986), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988).

After further research and the discovery of additional pertinent Seventh Circuit authority not cited by the defendants, the court finds that a plaintiff must adequately allege a pattern of racketeering to state a cause of action for a civil RICO conspiracy. *See Elliott v. Chicago Motor Club Insurance,* 809 F.2d 347, 349–50 (7th Cir.1986) (RICO conspiracy count along with two other RICO counts were dismissed for failure to plead a pattern of racketeering); *Marks v. Pannell Kerr Forster,* 811 F.2d 1108, 1112 (7th Cir.1987) (same); *see also Anvan Realty & Management Co. v. Marks,* 680 F.Supp. 1247, 1249 (N.D.Ill. 1988) (Duff, J.) (citing to *Pannell Kerr*). Consequently, the plaintiff's failure to adequately plead a pattern of racketeering mandates the dismissal of his § 1962(d) RICO conspiracy claim.

*Conclusion*

For the foregoing reasons, the court grants the defendants' motion to alter or amend the court's opinion of April 18, 1988. Accordingly, Counts IV and VI of the plaintiff's complaint are dismissed.

---

1. In his affidavit submitted in opposition to the defendants' motion to dismiss for want of personal jurisdiction, Cross states that he "has personal knowledge of the purchase of equipment and materials by Navojoa from Illinois merchants." Cross' Affidavit, at ¶ 4.